May it please the Court. My name is Robert Tyler. I represent S.D. Myers. Your Honor, I would appreciate three minutes for rebuttal. OK. You see the time. We'll keep track of the time, right? Go ahead. Thank you, Your Honor. Your Honor, this case presents the issue of uniformity versus unlawful confusion and chaos. This case pits the State's interest in uniformity against San Francisco's desire for unbridled, unrestrained authority to impose duties upon third parties. This Court should reverse the District Court's ruling because the City Ordinance, Chapter 12b, is expressly preempted by Family Code Section 297 at SAC for two crucial reasons. One is statewide interest. I'll address that later. The second reason is that the City's interpretation exceeds a purely municipal concern by imposing unrestrained duties on third parties, regardless of their location within the United States, and further, regardless of whether they have a contractual or proprietary relationship with the City. The landscape has changed. The legal landscape has changed since Myers 1. The City recognizes the problem with their interpretation, even in their own brief on page 13, footnote 9. It's a problem with extraterritorial regulation. I realize that in Myers 1 it was addressed, but because the landscape has changed at this point in time, we have to look first to interpreting the statute. And interpreting the statute, we want to take a look at Section 299.6, subsection C. Now there, it specifically states that duties may be imposed upon third parties. You will note that the phrase does not, or that section does not include a statement that duties may only be imposed upon third parties where there is a contractual relationship. That leads us to the basis of the assertion in this case. Your Honor, what we have to first do is we have to look, before we can apply this statute to our case, we must first, or this Court, I should say, must interpret the statute. And in interpreting the statute, the question arises is whether or not the phrase, within that jurisdiction, applies to the imposition of duties just as it does to the imposition of rights. If we accept the City's interpretation, if this Court accepts it … Let me ask my question a little differently. Is this a facial challenge or an as-applied challenge? Your Honor, this, in performing the statutory interpretation, we are having to look at it facially. It is a, it is a, if we first look at the interpretation of the statute, this Court interprets the statute, it must look to the language of the statute to interpret whether or not the phrase, whether or not the right to impose duties is limited to within the geographic territory of the City of San Francisco. And if this Court agrees with, with the position that, that we are forwarding, it will then look and see that the statute preempts the local ordinance, because the statute does not, does not permit extraterritorial regulation. Because within that jurisdiction, that phrase must also apply to duties. To not apply the phrase, within that jurisdiction, to the right to impose duties, it would bring the statute into an unlawful position. It would violate California Constitution, Article 11, Section 7. It says, a county or city may make and enforce within its limits all local police, sanitary, and other ordinances and regulations, not in conflict with general laws. It specifically limits it to within its limits. If we allow the city's interpretation that duties may be imposed upon third parties, and that's, that's the extent of it, no limitation that it's only to contractual proprietary relationships, no limitation to the geographic region of the city. But if we accept what the city would forward, that the phrase within that jurisdiction does not apply to the right to impose duties, that would render the statute unlawful. And the case law in California is very clear that we should presume that our legislature knows the law when it enacts the law. And here, there is the case of Farran versus City of Palo Alto that was cited. It says, any city may make and enforce regulations within its limits that are not in conflict with general laws. Usually they operate only in the territory of the municipality. The two, the first phrase, within its limits, and what I just read, only in the territory of the municipality. And it can have no force beyond it. And in that case, it was a license fee that was imposed based upon the number of employees that were located outside the city of Palo Alto. And the court looked at that and said, this is an unlawful extraterritorial power. The city does not have that authority. Likewise, in this situation with Family Code 297, it said, if we look at the right to impose duties, the legislature must have intended, when we look at the face of the statute, that they would only have the right to impose the duties to individuals and companies that are located, specifically located within the jurisdiction or within the territory. To do otherwise will render the statute unconstitutional. The only saving construction that can be made to keep this statute within constitutional realms is a narrow interpretation. And it says in the San Diego Union, a 1983 case, that express exceptions to the general statutory rule are to be narrowly construed and will not extend beyond the import of their terms. To allow, in this case, the right to impose duties upon third parties outside the geographic territory of the city of San Francisco would be an exception that swallows the rule. The rule of this statute, the general rule in 299.6, section A, is preemption. That's the general rule. The exception is in subsection C that allows municipalities within their jurisdiction to impose rights and duties. Now, rights and duties are coextensive. Where there is a right, there must be a duty on the other side. And where there is a duty, there must be a right on the other side. Well, let me ask you this. Isn't there a – well, there's a constitutional provision, Article 11, that exempts from preemption a State law that addresses purely municipal affairs. Why doesn't that apply to this ordinance? Yes, Your Honor. Article 11, Section 5 of the Constitution, addresses charter cities, for which San Francisco is a charter city. However, where there's a statewide interest, even if there's a municipal concern, the statewide interest prevails over the local concern. Doesn't there have to be a conflict between the State statute and the municipal ordinance before you get into preemption? Your Honor, that's correct. There must be a conflict. What is the conflict here? The conflict in this case, Your Honor, is when first interpreting the statute, it must be interpreted in order to maintain a constitutional statute that does not violate California Constitution. It must be interpreted that the – it must be interpreted that the right to impose duties may only be allowed within the geographic territory of the city. Well, didn't Myers 1 hold that this was not extraterritorial, it was simply telling the city how to make its contracts? Yes, Your Honor. Myers 1 did hold that the contracting and proprietary power was within the right of the city. But at the time, the appellate court did not have the statute. It did not rule upon the issue of preemption. The main issue in this case is preemption. It wasn't. Preemption wasn't before the court in Myers 1. That's right. That's exactly right. And that's what our sole – If you have preemption involved, don't you have to have a conflict? And what's the – I still don't understand what the conflict is between the two – the State statute, which covers – touches upon domestic relations, but it doesn't cover the field. Thank you, Your Honor. And the municipal ordinance deals with contracts. Yes, Your Honor. The conflict is this. Again, I have to come back. First, the first thing this court has to be able to do is to interpret the meaning of 299.6 subsection C. What rights does a city have in enacting ordinances with relation to domestic partnerships? When looking at the statute, the phrase within that jurisdiction must apply to the right to impose duties. Otherwise, as I previously discussed, the statute would be unlawful as an extraterritorial power. Therefore, when looking at the statute, it says that duties may be imposed upon third parties, but they may only be imposed within the jurisdiction of the city, within the geographic territory of the city. The Chapter 12B, the city's ordinance Chapter 12B, exceeds the territory of the city. It says that duties may be imposed upon third parties outside the state. It may be imposed such that it would ultimately violate the provision of the state statute that would say that duties may only be imposed upon parties within the jurisdiction of the city, within the geographic territory of the city. And so, effectively, the statute preempts the entire ordinance as it relates to domestic partnerships, because the state has a statewide concern with regard to domestic partnerships. Familial relationships have always been one for the court that they look at this as a statewide concern. Social behavior of individuals, as stated in Northern California Psychiatric Society, states that ordinance purporting to prescribe social behavior of individuals should normally be held invalid if statutes cover the area of principal concern with reasonable accuracy. We have express preemption in the statute. That, because there is expressly a preemption that duties may not be imposed on third parties outside the territory of the city of San Francisco. We have an express preemption where 297et sec preempts Chapter 12B of the San Francisco Ordinance. Further statewide concern is revealed by the statute itself. It provides a statewide definition, statewide registration, statewide rights with regard to hospital visitation, joint responsibility with regard to basic living expenses. Where there's a question between statewide concern and a city's municipal affairs, doubt must be resolved in favor of the legislative authority of the state. That's reflected in California Federal. I'm still having trouble finding what duties the city is imposing upon contractors outside the city. That is, if they order some merchandise from Michigan or Georgia or somewhere, what duties are they imposing on those contracting parties? Yes, Your Honor. I see my time has run. May I respond to your? Keep it short. But just tell me a duty they've imposed on them. The duty imposed by the San Francisco Ordinance is to provide domestic partner benefits. And it's imposed upon contractors that are outside the state. And with the city's interpretation of the statute, they would be able to impose those same duties on parties outside the state where there is no contractual and no proprietary relationship. That leads us back to where the court has to interpret the statute properly so that it remains lawful, which would mean the phrase within that jurisdiction must apply to the right of the city of San Francisco to impose duties. Thank you. Okay. Thank you. May it please the Court. Good morning. My name is Therese Stewart. I'm the Chief Deputy City Attorney representing the city and county of San Francisco. The Court should affirm the district court's decision in this case that the state domestic partner statute does not preempt San Francisco's equal benefits in contracting ordinance. The decision should be affirmed for two reasons, but really this Court need only reach one of them, as the district court did. The first reason is that the contracting ordinance does not pose a genuine conflict with the state's domestic partnership law. And it's on that that I will focus my comments. But I want to point out that there is a second reason, which if the Court disagreed on the first point with the district court, it would also have to address the issue of whether the San Francisco ordinance is a municipal affair, which the prior panel in this case decided it was, and then go on to look at whether there was such an overriding state interest as to require preemption. I don't think the Court need address that issue, and normally courts avoid that issue if they can determine that there is no genuine conflict, because getting into the municipal affair versus statewide concern issue involves a delicate balance between home rule powers of cities, charter cities, and the powers of the state government. But for the same reason that courts avoid that issue, there are some principles that they apply in looking at preemption through which this Court ought also to look to – that the Court also ought to apply here in applying the preemption analysis. And the first of those is that preemption is disfavored and won't likely be inferred. And the second is that if there's any way to harmonize state and local legislation, even if it appears to have a conflict, which I don't think it does here, the Court should make every effort to harmonize it first. Well, obviously, you know, the primary reliance by the appellant is placed upon that phrase in the state statute within the jurisdiction. What's your response to that contention? Is this within the jurisdiction? In other words, is this imposing those contractual requirements on a contractor from outside the city involving property that's not located within the city? No, Your Honor. The – let me step back. The – within the jurisdiction language is contained in subsection C of section 299.6 of the Family Code. That is an exception to the preemption provision, and the Court actually has to start with the express preemption provision, which is 299.6a. The 299.6a provides that provisions relating – that a local law or ordinance that provides for creation of a domestic partnership shall be preempted after a certain date, which was July 1st of 2000, except as provided in subsection C. So the starting point of the express preemption question isn't with subsection C, but rather with subsection A. That provision doesn't apply here at all. It doesn't expressly preempt the ordinance because the ordinance doesn't provide for the creation of a domestic partnership. What's the purpose of all these things specified in C, then? The exception in subsection C is that even where there's a domestic partner creation ordinance, which, by the way, San Francisco does have, but it's not the subject of this litigation. No, it didn't say creation. It says any ordinance that offers rights. Well, subsection C, again, is an exception to subsection A. Subsection A is the preemption provision. All I said was it's not limited to creation. You said subsection C talks about, you know, ordinances that create relationships, and it doesn't say that. That's all I'm saying. Let me step back. Subsection C only exists as an exception to A and B. You said that three times already. Okay. So C provides the exception for preemption – for policies, laws, and ordinances that offer rights within the jurisdiction to domestic partners. Well, that's one way to read it, but not the only way. Or offer. Not the only way to read C. It could be, you know, A and C could be entirely read to be entirely independent provisions. In other words, A preempts laws that create partnerships. Right. It has to do with ordinances that create that. Not San Francisco. San Francisco doesn't create partnerships. Subsection C pertains to other kinds of ordinances, namely ordinances that offer certain rights. I don't – respectfully, Your Honor, I don't agree. I think subsection C is referenced in subsection A. It says we preempt – the law preempts local ordinances that provide for creation of a domestic partnership except – But the point is, whether it does or not – I mean, why doesn't that phrase within the jurisdiction limit the duties that San Francisco ordinance can impose? Okay. That question I will answer, and it's a fairly straightforward one. It expressly applies that language, that within the jurisdiction language, to the exception that pertains to creation of rights. It does not – Oh, no, no. I said before, subsection C doesn't mention creation. It says ordinances that offer rights. Right. Not create. Okay. And the San Francisco ordinance offer – does offer rights, right? No, it does not, Your Honor. It doesn't offer any rights? It does not offer rights. What the San Francisco ordinance does is it states who the city of San Francisco will contract with and on what terms. The San Francisco – This says – subsection C says, or that impose duties upon third parties. And I don't think that – I don't understand the argument to be that it's – that it violates the exception to the preemption because it's offering rights. I understand it that what their argument is, is that your ordinance imposes additional liabilities on parties who give you contract, right? That's correct, Your Honor. I think that's their argument. Okay. And within the jurisdiction, language is not contained in the clause of subsection C that applies to imposing duties on third parties. And there's a well-established principle of statutory interpretation in California that when the legislature has carefully employed a term in one place and excluded it in another, it should not be implied or it's been excluded. Here, there really are two separate clauses. Hold it, hold it, hold it, hold it. Okay. So you're just going so fast. I'm trying to follow your argument. So you're saying that you are not preempted from imposing extraterritorial duties if there is a contractual relationship that exists by – by – That's correct, Your Honor. Subsection C. And, in fact, Mr. Tyler's argument is that you have to – you have to import the language in the first clause of subsection C within the jurisdiction into the second clause. I don't think he used the word – I don't think he used the word import. He's saying that, you know, the – there's nothing to him that indicates that the phrase within the jurisdiction doesn't apply to the second part of C, namely the part that imposes duties. But grammatically, Your Honor, it does – it is not there. It is not present. See, it depends on – I think it can be read both ways. It can be read as applying only to the rights within the jurisdiction or it can be read as applying to both rights and duties. You know, it depends on what the or means, whether the or means – means not to include the within the jurisdiction in the second part or not. I don't know what the answer is. You say there are cases that clearly say shouldn't be applied to the second part, right? Yes, Your Honor. That's your interpretation? What's your best case on that? Brown v. Kelly Broadcasting, which is cited in the brief. It's 48 Cal 3rd at 725. I think there are two clauses to Subsection C. Again, I don't think you even have to get to Subsection C because I think the real express preemption provision is in Part A of the statute. Part B, Subsection B of 299.6 doesn't even go to preemption. It addresses what happens to domestic partnerships that are created under laws that become preempted, and Subsection C is an exception to preemption that is referenced in both A and B. I would suggest there's another reason, though, if the Court does think the statutory language is ambiguous, that it should not here infer on the part of the legislature an intent to preempt the local ordinance, and that concerns both the backdrop and the legislative history of the ordinance. The adoption of San Francisco's groundbreaking ordinance, Equal Benefits Contracting Ordinance in 1996, was very well known within San Francisco and beyond. The ordinance was, in fact, the subject of a very highly publicized lawsuit. Ginsburg. Okay. So let's just say we're going to go back to this Subsection C again. So we're interpreting statutory language. Correct. Let's assume that we're now we have the statute is ambiguous as to whether it applies to imposing duties within that jurisdiction or not. Then we would turn to the legislative history if it is ambiguous, and what would we look to in that case? There are two things, Your Honor. First, you would look to the backdrop of what was going on at the time the ordinance was adopted, and that was what I was going to address first. Then you would look to the Senate Judiciary Committee, which addresses specifically the purpose for the preemption provision. And I would add a third thing, which is you fall back to the basic principles that I mentioned earlier, that preemption is disfavored and that we don't imply it lightly, and further, that the Court must make every effort to harmonize two pieces of legislation, State and local, where a charter city is involved. But let me go to the legislative history issue. The San Francisco Ordinance was adopted in 1996. Four months before supervisor then Assemblywoman Carol Migdon and the legislature passed this ordinance, this domestic partner statute. She was the sponsor of the domestic statute. The Assemblywoman Carol Migdon, Your Honor, who is, as the Court can I think take judicial notice, a well-known local legislator who has been an advocate for lesbian and gay rights. Assemblywoman Migdon proposed this, and it was adopted four months after the district court in this case and the companion case involving the airlines upheld most of the provisions of San Francisco's ordinance. It is inconceivable that the Assemblywoman Migdon and the legislature were unaware of San Francisco's Equal Benefits Ordinance. And furthermore, there's a presumption under California law that the legislature is aware of existing law when it adopts a statute. Well, I don't know if that – if there is such a presumption. I don't know that it extends to the ordinance of every city in California. I doubt that there's such a presumption. I think it applies broadly, Your Honor. But even if the general presumption were not deemed to apply, in this instance there was national publicity, the – Hang on a minute. That's not part of the legislative history. The Senate – It's not legitimate legislative history is what I'm saying. Well, I would respectfully disagree. I think it is the backdrop in which the statute was adopted. Maybe what you call a popular backdrop, but that's not a part of the legislative history. Well, there was a published – You can't cite to me a report that has that in it, can you? Yes. There was a – I'm sorry, an opinion of the court. I can't cite you to something that involves local law. A legislative report, a committee report from the California legislature. Yes. Let me move on to the committee report. But I do want to mention there was a published decision of the district court in this case that was on record, and that there are cases saying that the court – that legislatures are presumed to be aware of case law developments, and there was a district court decision upholding San Francisco's Equal Benefits Ordinance. The Senate Judiciary Committee report on the state legislation made plain that the goal of the preemption provisions was very limited. It was designed to set a floor, a minimum floor is what the language of that report says, on domestic partner rights and obligations and not a ceiling. The report actually notes concerns that were expressed by some people that preemption could eliminate the broader rights and benefits provided by local jurisdictions, and it disclaimed any intent to do that and, in fact, described the law not only as a minimum floor, but stated that it would preserve preexisting domestic partnerships and not prevent local jurisdictions from offering more or broader rights or imposing broader duties. So given the history – Are you just reading from what he's saying? Your Honor, I believe it's attached in the excerpts of record. I think it's Exhibit C, if I – The committee report? Yes. It's the Senate Judiciary Committee report, Exhibit C to the excerpts of record. And it is – there's a page that specifically addresses the preemption provisions, and I believe it is page 7. Given that legislative history, the only logical conclusion is that the express preservation in Subsection C of local laws that impose duties on third parties regarding domestic partners that are in addition to the duties set out in this division – and that's the pertinent language of Subsection C – was intended to preserve ordinances like San Francisco's Equal Benefits Ordinance and similar laws. Well, there's no question. I mean, even if that's all true, it still doesn't answer the question of the meaning of within the jurisdiction, whether the legislature meant to limit that right to within the jurisdiction. Is there any reason to suppose that the legislator wanted San Francisco to regulate affairs outside of the city? What's the evidence of that in the legislative report? Your Honor, I believe two things. One is I think that the very exclusion of that language from the clause is evidence regarding duties. No, no, I said what in the legislative report gives us any hint of the legislature's intent that it wanted San Francisco to regulate matters outside of the city. I can't refer the Court to anything specific in the legislative history. To answer it, there's no legislative history that helps us either way. Well, again, I believe the Senate Judiciary Report does, but it doesn't specifically point to the San Francisco Ordinance, if that's what the Court is asking. No, all I'm saying, is there any indication that the state legislature wanted cities to regulate, you know, these kinds of rights outside of their city boundaries? The Court in our view. Is there some reason why San Francisco should regulate, you know, what goes on in the city of Sacramento? I realize my time is up. I want to answer your question. I have one, too, so answer his and then I have one for you, okay? Closing with reminding the Court that the city of San Francisco was not regulating here. It was exercising its contracting power. That is something that. That's an entirely different question. We're talking now about legislative intent. That's what you're trying to tell me, that the legislature is clear that, you know, the San Francisco Ordinance should be given full effect. But where is the intent about, you know, not within the city? I believe, again, that that. First of all, it's the clause in subsection C that allows imposition of duties. We're talking about the legislative history, not the clause in. We've been over that clause many times. And I think I've explained the judiciary report in my reading of it, and I don't have anything to add to that, Your Honor. All right. Then let's get to Judge Wardlaw's question. Well, it's related. I guess I see some inconsistent language in the legislative history, because in that provision, you cited question of preemption of local ordinances. There's this statement, further, the preemption language in SB 75 preserves preexisting domestic partnerships and would not prevent local jurisdictions from offering more or broader rights to domestic partners, or maybe that's just within their jurisdictions. And then it goes on to say that language for an amendment has been drafted to clarify that any local jurisdiction may adopt ordinances or policies that offer rights to domestic partners or that impose duties on third parties regarding domestic partners that are in addition to the rights and duties. And it suggests that if there's an amendment, that language should be included. It seems to me there's inconsistent legislative history, because when it's talking about rights, again, in the legislative history, it talks about within their jurisdiction. But then when it goes on to duties, it again omits that language. Right. I think it's fairly consistent with the statute itself in making that distinction. And I would simply suggest to Your Honor that the legislature and particularly the supervisor that authored, I mean, the assemblywoman that authored this legislation was very well aware of the San Francisco ordinance, and it would not have intended and did not intend to preempt. But even if the court had that concern, it has to follow its duty to try to adopt an interpretation that avoids a conflict. Finally, as I mentioned earlier, if the court thinks there is a conflict, then it has to go on to look at the municipal affairs issue. I don't think time permits me to address that issue, but that would be a further layer in the analysis that would support the district court's decision. All right, Ms. Stewart. Thank you very much. Thank you. Mr. Talley, you have an opportunity for a brief rebuttal. Thank you, Your Honors. The Constitution must trump any grammatical ambiguity in the legislative history. We first look to the courts, we first look to the face of the statute in interpretation, and to accept the city's interpretation would provide an unconstitutional interpretation regardless of what the legislative history says. And with regard to legislative history, there is one thing that is very clear. The domestic partner legislation is intended to promote uniformity within the state. Uniformity is not promoted where the uniformity is limited to the creation, the registration and so forth, that those aspects of the domestic partnership. Your Honor, the statute, 299.6a, is a preemption, is a general rule of preemption. And subsection c, as you quite articulated earlier, that it addresses rights and duties. So it's very clear that it addresses more than just the creation. The city, I'd like to point out again, on page 13, subparagraph 9, they recognize the problem with their interpretation of the statute, that their interpretation has unconstitutional extraterritorial problems. They say, to the extent that Myers is asserting that section 299.6c cannot be interpreted to allow a jurisdiction to regulate beyond its boundaries, as by imposing duties on third parties that are not in a commercial relationship with the jurisdiction, there's a simple answer. And they go on to say, well, the city does not advocate such a position. But how can the city take what they want and leave what they don't want? That is what they're trying to do. The statute allows the imposition of duties upon third parties. If their interpretation allows the interpretation, I think my time is up. Can I finish my statement? Go ahead. If the court were to accept the city's interpretation, then it would be saying, well, the city says it's okay as long as it's within the contracting power. But we don't think it's appropriate to apply to all other third parties. But the fact of the matter is, is the exception to the rule does not provide a limitation to contracting authority, and therefore, this Court should overturn the lower court because the statute may only constitutionally and lawfully be applied within the geographic territory of the city of San Francisco. Thank you. All right. Thank you, Mr. Starr. Thank you, Mr. Stewart. This case is submitted for decision. Last case on today's calendar, so we'll stand in recess for the day.
judges: Goodwin, Tashima, Wardlaw